```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
4KIDS ENTERTAINMENT, INC., et al.,            :

               Plaintiffs,                    :  10 Civ.3386 (CM) (GWG)

     -v.-                                     :  REPORT AND RECOMMENDATION

THE UPPER DECK COMPANY, et al.,               :

               Defendants.                    :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiffs 4Kids Entertainment, Inc. and 4Kids Productions, Inc. (collectively, "4Kids") brought this action to recover damages stemming from the failure of defendants The Upper Deck Company ("Upper Deck") and Upper Deck Entertainment, LLC ("UD LLC") to pay 4Kids in accordance with a series of contracts between the parties. Because defendants are in default, the only remaining issue is damages.

I.   PROCEDURAL HISTORY, GRANT OF SUMMARY JUDGMENT, AND DEFAULT

4Kids filed its complaint on April 22, 2010. See Complaint, filed Apr. 22, 2010 (Docket # 1) ("Compl."). Defendants answered and counterclaimed. See Defendants The Upper Deck Company and Upper Deck Entertainment, Inc.'s Answer and Affirmative Defenses, filed June 21, 2010 (Docket # 8); Defendants The Upper Deck Company and Upper Deck Entertainment, Inc.'s Amended Answer, Affirmative Defenses, and Counterclaim, filed July 12, 2010 (Docket # 9). In their complaint, 4Kids asserted five causes of action against defendants: (1) breach of contract, (2) quantum meruit, (3) unjust enrichment, (4) breach of the implied covenant of good faith and fair dealing, and (5) account stated. See Compl. ¶¶ 73-108. The allegations concern three contracts between the parties. The first, the "Huntik Term Sheet," was a license agreement between 4Kids and Upper Deck regarding an animated television series. See id. ¶¶ 8-9. The

second contract, the "Huntik Commercial Production Agreement," was an agreement between 4Kids and UD LLC for plaintiffs to produce commercials for the Huntik animated series. See id. ¶¶ 35, 36, 38. The third agreement, the "Dinosaur King Production Agreement," was between 4Kids and Upper Deck for the production of commercials for the "Dinosaur King trading card game." See id. ¶¶ 49-50. On May 31, 2011, Judge Colleen McMahon issued a Decision and Order granting in part and denying in part 4Kids' motion for summary judgment. See 4Kids Entm't, Inc. v. Upper Deck Co., 797 F. Supp. 2d 236 (S.D.N.Y. 2011).

As to the claims based on the Huntik Term Sheet, Judge McMahon granted 4Kids' motion for summary judgment finding Upper Deck liable for breach of contract for failing to make a $175,000 payment, see id. at 244-45; denied 4Kids' motion for summary judgment with respect to damages resulting from the breach (other than 4Kids' claim to the interest on the $175,000 from the time it should have been paid), see id. at 244-45, 247-48; dismissed all other claims related to the Huntik Term Sheet, see id. at 248-49; and denied 4Kids' request for attorneys' fees related to the Huntik Term sheet as "premature," see id. at 249-50.

As to the claims based on the Huntik Commercial Production Agreement, Judge McMahon denied 4Kids' motion for summary judgment and dismissed these claims. See id. at 250.

As to the claims based on the Dinosaur King Production Agreement, Judge McMahon granted 4Kids' summary judgment motion on its claim that Upper Deck breached the Dinosaur King Production Agreement by failing to timely pay the amount it owed. See id. at 252. However, because Upper Deck ultimately paid the amount owed (after 4Kids filed its summary judgment motion), the court found that 4Kids was entitled to only two types of damages: (1) "interest commencing thirty days after the invoice was issued," id., and (2) attorneys' fees, but

not for any "fees incurred from and after the date when the invoice was satisfied," or December 10, 2010, see id. at 252-53. Further, the court stated that "any fee application must be only for time that is unequivocally referable to the assertion in this lawsuit of the claim under the Dinosaur King Commercial Production Agreement. If that time cannot be separately accounted for, no fees will be awarded." Id.

As a result of the dismissal of the claims concerning the Huntik Commercial Production Agreement, no claims against UD LLC remain in this case. See Declaration of Kristen M. Gray in Support of Plaintiffs' Application for Final Judgment, filed June 8, 2012 (Docket # 59) ("Gray Decl.") ¶ 91; Declaration of Evan S. Rothfarb in Support of Plaintiffs' Application for Final Judgment, filed June 8, 2012 (Docket # 60) ("Rothfarb Decl.") ¶ 25.

Accordingly, as described in Judge McMahon's decision on the summary judgment motion, the following issues remained to be decided as of the date of that decision:

> (1) damages due to Plaintiffs for Defendants' breach of the Huntik Term Sheet;
> (2) the amount of interest due to Plaintiffs for Defendants' breach of the Dinosaur King Commercial Production Agreement; (3) attorneys' fees, if any, attributable to the assertion of the Dinosaur King Commercial Production Agreement claim for breach of contract; and (4) attorneys' fees that may (or may not) end up being awarded pursuant to the Huntik Term Sheet.

4Kids Entm't, 797 F. Supp. 2d at 253.

Following the summary judgment decision, defendants' counsel filed a motion to withdraw, which Judge McMahon granted by memorandum endorsement. See Memorandum Endorsement, filed Feb. 29, 2012 (Docket # 45). In granting that motion, Judge McMahon warned defendants that they needed to procure new counsel by March 16, 2012 or risk being in default. Id. When defendants failed to obtain new counsel, Judge McMahon issued an order declaring defendants to be in default. See Order Declaring Defendants to Be in Default,

Precluding Defendants from Introducing Proof at the Inquest on Damages, and Referring Oscar A. Herasme, Esq. to the Court's Committee on Grievances for Possible Discipline, filed May 8, 2012 (Docket # 50). The order finding defendants to be in default stated that they were "precluded from offering any proof on the question of damages or attorneys' fees." See id. Thereafter the case was referred to the undersigned for an inquest. See Order of Reference to a Magistrate Judge, filed May 11, 2012 (Docket # 51).

On May 11, 2012, this Court issued a scheduling order directing 4Kids to file Proposed Findings of Fact and Conclusions of Law with supporting documentation in support of its request for damages. See Order, filed May 11, 2012 (Docket # 52). On June 8, 2012, 4Kids submitted its proposed findings of fact and conclusions of law, along with supporting affidavits. See Proposed Findings of Fact and Conclusions of Law in Support of Plaintiffs' Application for Final Judgment, filed June 8, 2012 (Docket # 58) ("Pl. Mem."); Gray Decl.; Rothfarb Decl.

II.   DISCUSSION

When a default is entered for failing to respond to a complaint, a court accepts as true all of the factual allegations of the complaint for purposes of determining liability. See, e.g., Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC, 665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009). In the instant case, however, all issues of liability were resolved in the summary judgment motion, and the default occurred after that date. Accordingly, the determinations of liability in the summary judgment motion, described above, necessarily govern as well.

Because the default judgment establishes Upper Deck's liability, see, e.g., Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995), the only issue remaining is whether plaintiffs have supplied adequate proof of their damages, see GAKM Res. LLC v. Jaylyn Sales

Inc., 2009 WL 2150891, at *2 (S.D.N.Y. July 20, 2009) ("A default judgment that is entered on the well-pleaded allegations in a complaint establishes a defendant's liability, and the sole issue that remains before the court is whether the plaintiff has provided adequate support for the relief it seeks.") (citations omitted); cf. Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993).  The Second Circuit has held that an inquest into damages may be held on the basis of documentary evidence alone, "as long as [the court has] ensured that there was a basis for the damages specified in [the] default judgment." Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989); accord Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991), cert. denied, 503 U.S. 1006 (1992).  Plaintiffs' submissions include affidavits and documentary evidence.  See Gray Decl.; Rothfarb Decl. Because these submissions provide a basis for an award of damages, no hearing is required.

The following facts are based on the summary judgment's liability findings and on the 4Kids' documentary submissions with respect to the issue of damages.

    A.    Damages and Interest

The summary judgment decision established that defendants breached both the Huntik Term Sheet and the Dinosaur King Commercial Production Agreement.  See 4Kids Entm't, 797 F. Supp. 2d at 244, 252.  Accordingly, we turn to the question of what damages, if any, the court should award 4Kids on these two claims.

    1.    Huntik Term Sheet

In 2008, "Upper Deck and 4Kids entered into a two-year licensing and broadcasting agreement for the Huntik Series, an animated children's television series." Id. at 242.  The Term Sheet required defendants to pay 4Kids an advance of $350,000 to be paid in accordance with an

5

agreed-upon payment schedule.  See Huntik Term Sheet, dated Feb. 25, 2008 (annexed as Ex. 1 to Gray Decl.) ("Term Sheet") ¶ 10(c).  On October 2, 2008, 4Kids issued an invoice for the first half of the advance.  See Invoice, dated Oct. 2, 2008 (annexed as Ex. 6 to Gray Decl.).  This invoice was paid via wire transfer on December 23, 2008.  See Cash Reporting – Balance & Transaction Detail, dated Dec. 23, 2008 (annexed as Ex. 7 to Gray Decl.).  On July 30, 2009, 4Kids issued an invoice for the second half of the advance in the amount of $175,000.  See Invoice, dated July 30, 2009 (annexed as Ex. 8 to Gray Decl.) ("2d Invoice").  This $175,000 was due on before December 18, 2009.  See id.  Defendants failed to pay this amount, and 4Kids has provided evidence that the defendants had an unconditional obligation to pay it.  Gray Decl ¶¶ 43-52.  Accordingly, 4Kids is entitled to damages in the amount of the $175,000 that defendants failed to pay.

### 2. Dinosaur King Commercial Production Agreement

On May 1, 2009, 4Kids began production of a commercial spot for Dinosaur King.  See 4Kids Entm't, 797 F. Supp. 2d at 251.  The parties signed a written Commercial Production Agreement on June 2, 2009.  See Commercial Production Agreement, dated June 2, 2009 (annexed as Ex. 9 to Gray Decl.).  A prior Work Authorization Form laid out the services and listed the cost as $9,701.00.  See Work Authorization Form, dated May 1, 2009 (annexed as Ex. 10 to Gray Decl.).  It specified that $5,000 would be offset from Upper Deck's media account, and 4Kids would invoice Upper Deck for the remaining $4,701.  See id.  Thereafter, a second Work Authorization Form was issued on May 14, 2009 for rush revisions.  See Work Authorization Form, dated May 14, 2009 (annexed as Ex. 11 to Gray Decl.).  On June 9, 2009, 4Kids issued an invoice for $5,879.00 – the total amount due for the Dinosaur King commercial, less the $5,000 offset.  See Invoice, dated June 9, 2009 (annexed as Ex. 12 to Gray Decl.).  The

invoice was marked due "upon receipt." Id. Upper Deck did not pay this invoice until December 10, 2010. See 4Kids Entm't, 797 F. Supp. 2d at 252 (citing Invoice & Check (annexed as Ex. C to Declaration of Michael A. Bernstein, filed Dec. 13, 2010 (Docket # 30))).

According to the summary judgment decision, defendants are liable to 4Kids for interest on the untimely payment under the Dinosaur King Commercial Production Agreement beginning thirty days after the invoice was issued, see 4Kids Entm't, 797 F. Supp. 2d at 252, which is July 9, 2009. 4Kids acknowledges receiving the check in payment for this invoice on or about December 15, 2010. See Gray Decl. ¶ 84.

4Kids seeks interest on the full amount due from thirty days after the invoice was issued until December 15, 2010. See Pl. Mem. ¶ 177. Under New York law, "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract." N.Y. C.P.L.R. § 5001(a); see also NML Capital v. Republic of Argentina, 17 N.Y.3d 250, 258 (2011) ("CPLR 5001 permits a party that prevailed in a breach of contract action to obtain prejudgment interest . . . ."). The prejudgment interest rate is 9 percent per annum. N.Y. C.P.L.R. § 5004. Therefore, 4Kids is entitled to 9% interest on the $5,879.00 from July 9, 2009, to December 15, 2010. This amounts to $1.449616 daily ($5,879 X 0.09/365) for 524 days, or $759.60.

B.   Pre-Judgment Interest

As previously mentioned, New York law provides for prejudgment interest at 9 percent per year. N.Y. C.P.L.R. § 5004. Under New York law,

> [i]nterest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

N.Y. C.P.L.R. § 5001(b).

4Kids is entitled to interest on its damages from Upper Deck's breach of the Huntik Term Sheet. 4Kids seeks interest commencing on December 18, 2009, see Pl. Mem. ¶ 177, which is when the payment was due according to the invoice, see 2d Invoice. The Court will accept this date. At a 9 percent annual interest rate, the amount of interest due to plaintiffs on the unpaid $175,000 equals $43.15068 per day ($175,000 X 0.09/365).

4Kids also seeks interest on the amount owed on its claim of untimely payment under the Dinosaur King Commercial Production Agreement. 4Kids of course is not entitled to be paid interest based on the entire unpaid $5,879 because this amount was ultimately paid. Instead, it is entitled to interest on the amount calculated in section II.A.2 above that compensated 4Kids for the delay in payment: that is, $759.60. At a 9% interest rate, interest on $759.60 accrues at rate of $0.187299 ($759.60 X 0.09/365) per day. Accordingly, 4Kids is entitled to interest on this claim at a rate of $0.187299 per day commencing on December 15, 2010, until the date of judgment.

    C.    <u>Attorneys' Fees and Costs</u>

        1.    <u>Attorneys' Fees for the Dinosaur King Commercial Production Agreement</u>

While Judge McMahon held that 4Kids was entitled to attorneys' fees in connection with the Dinosaur King Commercial Production Agreement claim, she ruled that attorneys' fees could be claimed (1) only up to the date the invoice was satisfied, and (2) "only for time that is unequivocally referable to the assertion in this lawsuit of the claim under the Dinosaur King Commercial Production Agreement." 4Kids Entm't, 797 F. Supp. 2d at 253. She specifically held that "[i]f that time cannot be separately accounted for, no fees will be awarded." Id.

4Kids concedes that this time cannot be separately accounted for except by means of a percentage reduction. Rothfarb Decl. ¶ 67. Accordingly, no attorneys' fees should be awarded for this claim.

2.      Attorneys' Fees for the Huntik Term Sheet Claim

The Huntik Term Sheet requires Upper Deck to indemnify 4Kids for "any and all . . . costs and expenses, including reasonable outside attorneys' fees, arising from any breach by [Upper Deck] of any of its . . . duties and/or obligations [under the agreement]." Term Sheet ¶ 16(b). In the summary judgment decision, Judge McMahon held that this indemnification clause "contemplates payment of attorneys' fees in actions for breach brought by one party to the contract against the other." See 4Kids Entm't, 797 F. Supp. 2d at 253. Therefore, 4Kids is entitled to attorneys' fees in connection with the Huntik Term Sheet breach of contract claim.

As the Second Circuit noted in Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182 (2d Cir. 2008), "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate." Id. at 186 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). This figure has commonly been referred to as the "lodestar," though Arbor Hill indicates a preference for the term "presumptively reasonable fee." Id. at 183.

Additionally, it is well-established that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). The Court's task is to make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). The critical inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time

expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted), cert. denied, 506 U.S. 1053 (1993).  If a court finds that claimed hours are "excessive, redundant, or otherwise unnecessary," it should exclude those hours from its "lodestar" calculation.  Hensley, 461 U.S. at 434; accord Quaratino v. Tiffany & Co., 166 F.3d 422, 426 n.6 (2d Cir. 1999); Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998); Luciano v. Olsten Corp., 109 F.3d 111, 116-17 (2d Cir. 1997).

Here, 4Kids has provided a summary of contemporaneous time records.  See Time Records (annexed as Ex. 2 to Rothfarb Decl.) ("Time Records").  Such a summary is permitted by case law.  See, e.g., Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160-61 (2d Cir. 1994); Johnson v. Kay, 742 F. Supp. 822, 837 (S.D.N.Y.1990).  The Court has examined these records and finds the total number of hours to be reasonable in relation to the tasks that were performed, including the filings of pleadings, document discovery, depositions, and various motions.  See Time Records.

The fees attributable to the Huntik Term Sheet claim are not readily segregable from the other claims, however, because of "the substantial overlap in both facts, legal theories and drafting efforts" among the claims brought by plaintiffs.  Rothfarb Decl. ¶ 67; see id. ¶ 65. Courts have held that where billing records do not allow a court to segregate compensable and uncompensable hours, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'"  Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (quoting Carey, 711 F.2d at 1146).  Indeed, plaintiffs propose the same procedure.[1]

---

[1]  4Kids proposes a 5% decrease to account for the time spent advancing legal claims that were disallowed, see Pl. Mem. ¶ 203, and an additional 5% decrease for time spent on the

10

Here, 4Kids brought claims seeking payments under three different contracts. But it would be inappropriate to impose a large reduction in hours to arrive at the hours attributable to the Huntik Term Sheet claim for two reasons. First, the Huntik Term Sheet claim was by far the one of the greatest value. See Compl. ¶¶ 29-34 (Huntik Term Sheet claim valued at $175,000); id. ¶¶ 66-72 (Dinosaur King Commercial Production Agreement valued at $5,879); id. ¶¶ 43-47 (Huntik Commercial Production Agreement valued at $2,432). Second, there was a "substantial overlap" in the claims. Rothfarb Decl. ¶ 65. While certain legal theories were disallowed on the summary judgment motions, courts recognize that hours spent on unsuccessful claims may be awarded if the claims are "'inextricably intertwined' and 'involve a common core of facts.'" Quaratino, 166 F.3d at 425 (quoting Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183 (2d Cir. 1996)); accord Murphy v. Lynn, 118 F.3d 938, 952 (2d Cir. 1997) ("A plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and the unsuccessful claims were interrelated and required essentially the same proof."), cert. denied, 522 U.S. 1115 (1998) (citation omitted). Given the interconnectivity between the claims, the Court concludes that an across-the-board reduction of 15% in total hours for each attorney is appropriate to arrive at a figure for the fees attributable to the Huntik Term Sheet claim by itself.

Arbor Hill made clear that a "reasonable" hourly rate is "what a reasonable, paying client would be willing to pay." 522 F.3d at 184. In addition, the rate to be set for the plaintiffs' attorneys must be "'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Reiter v. MTA N.Y.C.

---

Dinosaur King claim following satisfaction of the invoice, see id. ¶ 207. As noted, however, we believe that 4Kids is not entitled to obtain attorneys' fees for the Dinosaur King claim at all.

Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006) (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)) (insertion in original), cert. denied, 549 U.S. 1211 (2007).  A court may rely on its own knowledge of prevailing rates to make this determination.  See McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96-97 (2d Cir. 2006) ("A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate.") (citing Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987)); Farbotko v. Clinton County, 433 F.3d 204, 209 (2d Cir. 2005) (court may consider its "own familiarity with the rates prevailing in the district").  Here, based on its own knowledge, the Court concludes that the hourly rates requested by the attorneys, which range from $50 for a contract attorney to $325 for the main attorney on this case, are reasonable based on each attorney's experience.

      Counsel for 4Kids indicates that it gave 4Kids a "courtesy discount" of $16,526.18.  Rothfarb Decl. ¶ 71.  Accordingly, this amount, less 15%, or $14,047.25 should be subtracted from any fees owed.

      Thus, 4Kids should be awarded its requested hourly rates, with a 15% reduction applied to the total hours worked.  The hours worked, reduced by 15%, and hourly rate of each attorney are as follows (see Rothfarb Decl. ¶ 72):

| Surname of Attorney | Number of Hours | Hourly Rate | Total |
| --- | --- | --- | --- |
| Rothfarb | 307 | $325 | $99,775 |
| Antoncic | 7.8625 | $200 | $1,572.50 |
| Morrison | 29.75 | $200 | $5,950 |
| Fleming | 50.6855 | $50 | $2,534.28 |

The total is $109,831.78 in attorneys' fees.  Subtracting the "courtesy discount" of $14,047.25,

the net total attorneys' fees is $95,784.53.

4Kids also seek costs of $4,384.19. These costs consist of: (1) the $350 filing fee; (2) $166.80 for service costs; (3) $425 for deposition transcript fees; (4) $43.54 for a USB media drive to serve electronic discovery on the defendants; and (5) $3,398.85 for document processing and hosting for 4Kids' electronically stored information. See Rothfarb Decl. ¶ 75. The indemnification clauses are broadly worded to include all "costs" and "expenses" incurred by 4Kids. See Term Sheet ¶ 16(b). Thus, these costs should be awarded as well.

### D.  Summary of Damages

Accordingly, the following damages should be awarded:

| | |
|---|---|
| Compensatory Damages: | $175,000 (for the Huntik Term Sheet claim) |
| | $759.60 (for the Dinosaur King Production Agreement claim) |
| Costs: | $4,384.19 |
| Attorneys' Fees: | $95,784.53 |

Prejudgment Interest:

For the award of $175,000, prejudgment interest accrues at the rate of $43.15 per day from December 18, 2009 until the date of judgment.

For the award of $759.60, prejudgment interest accrues at the rate of $0.19 per day from December 15, 2010 until the date of judgment.

### III.  CONCLUSION

For the foregoing reasons, 4Kids should be awarded a judgment against The Upper Deck Company in the amount of $275,928.32, plus (a) prejudgment interest accruing at the rate of $43.15 per day from December 18, 2009 until the date of judgment, and (b) prejudgment interest accruing at the rate of $0.19 per day from December 15, 2010 until the date of judgment.

## **PROCEDURE FOR FILING OBJECTIONS TO THIS**
## **REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Colleen McMahon, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge McMahon. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: June 21, 2012
       New York, New York

                                            GABRIEL W. GORENSTEIN
                                            United States Magistrate Judge

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Colleen McMahon, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge McMahon. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: June 21, 2012
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

14